UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

SAMANTHA CUNNINGHAM,

       Plaintiff,

  v.

PEGGY DAVIS, *in her individual capacity*,
Virginia State University
Department of Athletics
1 Hayden Drive
Petersburg, Virginia 23806;


    and


JAMESHIA SMITH, *in her individual capacity*,
Virginia State University
Department of Athletics
1 Hayden Drive
Petersburg, Virginia 23806;

      Defendants.

Case No.: <u>3:24cv647</u>

JURY DEMAND

## <u>COMPLAINT</u>

Plaintiff Samantha Cunningham dared to speak out about Virginia State University's failure to address its softball players' mental health issues, and was swiftly punished for her free speech. She was suspended and dismissed from her college softball team, taking away years of eligibility and an athletic scholarship,

effectively ending her hope of playing competitive softball. To vindicate her rights under the First Amendment, Ms. Cunningham files this lawsuit.

## PARTIES

1.      Plaintiff Samantha Cunningham is a citizen of the Commonwealth of Virginia. Ms. Cunningham, at all times relevant to her claims, was a student-athlete at Virginia State University.

2.      Defendant Peggy Davis ("Davis") is the associate vice president for intercollegiate athletics at Virginia State University. She is a citizen of the Commonwealth of Virginia.

3.      Defendant Jameshia Smith ("Smith") is the head softball coach at Virginia State University. She is a citizen of the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because all claims in this lawsuit arise under the laws of the United States.

5.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this judicial district.

6.      This Court possesses personal jurisdiction over Peggy Davis because she is a citizen of the Commonwealth of Virginia.

7.      This Court possesses personal jurisdiction over Jameshia Smith because she is a citizen of the Commonwealth of Virginia.

2

## FACTS COMMON TO ALL CLAIMS

8.      In the Fall of 2021, Ms. Cunningham was a returning player to Virginia State University softball program, and was on scholarship.

9.      After weighing her options, Ms. Cunningham decided to stay at Virginia State University to pursue a Master's Degree.

10.     She returned on campus in the Fall of 2021 and matriculated as a student and as a softball player.

11.     Upon arriving and beginning practice, Ms. Cunningham and other players quickly developed a relationship with Coach Crews, who served as Associate Head Coach of the Virginia State Softball team.

12.     Coach Crews quickly became a mentor for the players and was the coach most involved with player development, team logistics, and communication aspects of softball for the program.

13.     Coach Smith, by contrast, was noticeably absent oftentimes throughout the season, and did not develop the same relationship with the players.

14.     The Virginia State Softball team had a great Spring 2022 season, and Coach Crews was widely credited for their success.

15.     Several issues relating to the players' mental health began to surface throughout the process, and players began to express that the Smith was not adequately responding to team members' complaint regarding their mental health.

16.     Following the season, in the Fall 2022 semester, Coach Crews decided to leave the softball program.

3

17.    This departure rocked the program, exacerbating the mental health issues and causing the players to doubt the direction of the program. The mental health of the players continued to deteriorate as the Fall 2022 season begain.

18.    On or about October 14, 2022, Cunningham posted a video to her personal Instagram account in which she stated the program was "not doing well" and vaguely described the issues surrounding the departure of Crews.

19.    In that video, Cunningham states that an unnamed administration official had been informed of issues with Defendant Smith and the program multiple times, but "did not care" which led to the departure of Crews.

20.    On October 15, 2022, Defendant Smith texted the team group text message group, threatening the team (incliding Ms. Cunningham), saying that she has received multiple calls and messages from Virginia State staff about social media posts and warns them to "[b]e careful of involving yourself in anything that could possibly take away your livelihood."

21.    On October 18, several players, including Ms. Cunningham, started a petition to bring awareness to the issues in the Virginia State softball program.

22.    The petition did not mention Defendant Smith, Defendant Davis, or any other Virginia State staff member and merely asked for support as the team approached the administration with a plan to request that Crews be installed as the head softball coach.

23.    Three days later, most of the players met with Deefendant Davis for approximately an hour and a half.

4

24. The meeting began with Ms. Cunningham and other team members explaining in detail their issues with Defendant Smith, including unaddressed mental health issues, lack of coaching effort and knowledge, and lack of an actual relationship with her players.

25. The meeting was unproductive and Defendants made no effort to remedy the players' concerns following the meeting.

26. On October 26, 2022, five days after the closed-door meeting, Ms. Cunningham and two other players were called into a second meeting with Defendant Smith and Defendant Davis.

27. As soon as the meeting began, the players were immediately and summarily suspended and denied a reason other than the "best interest of the team."

28. After the meeting had concluded, the players pressed for more information and a reason in writing. In response, Defendant Smith stated for the first time that the players who had complained (including Ms. Cunningham) were bullying teammates, an accusation that had never previously been made and that was a pretext for the suspension already imposed.

29. Ms. Cunningham and other plays then went to Defendant Davis, Defendant Smith's superior. Defendant Davis supported Defendant Smith, stating "as the head coach, she is allowed to suspend, she's allowed to make those decisions."

30. The players continued pressing for actual reasons as to why they were suspended, and eventually Defendant Smith stated that "for the betterment of the team, y'all are suspended."

31.    In reality, Defendant Smith and Defendant Davis were upset by Ms. Cunningham's public statements regarding the administration's handling of mental health concerns and her other criticisms about the administration of the team. Ms. Cunningham sought systemic change, and she was punished for it.

32.    Ms. Cunningham promptly appealed the suspension.

33.    Defendant Davis rendered an appeal decision on until May 2, 2023.

34.    In her appeal decision letter, Defendant Davis she was upholding the suspension from the team.

35.    As a result from being suspended from the team, Ms. Cunningham lost the ability to continue pursuing softball as a competitive sport, and lost scholarships. She also suffered damage to her mental health.

36.    Ms. Cunningham and the other players were instead ostracized and blamed for the dysfunction within the program, all because they reported mental health issues to the proper authorities in good faith.

## CAUSES OF ACTION

### COUNT I
### Violation of the First Amendment's Free Speech Clause, via 42 U.S.C. §1983
### Against Both Defendants in their Individual Capacities

37.    Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

38.    The First Amendment, as incorporated against the States by the Fourteenth Amendment, protects the freedoms of speech and association.  These protections do not apply with less force to college students. To the contrary, the

protection of constitutional freedoms on campus is vital. College students must always remain able to speak freely in order to properly study, learn, and mature.

39.    The First Amendment prohibits retaliation against students who exercise their right to free speech.

40.    Ms. Cunningham's complaints on her Instagram account and her public petition, both seeking systemic change in Virginia State University's athletics program, were protected by the First Amendment.

41.    Defendants Smith and Davis, retaliated against Ms. Cunningham for exercising her First Amendment rights by suspending her.

42.    Defendants, by virtue of their positions as public employees, took these actions against Ms. Cunningham under color of state law.

43.    Accordingly, Ms. Cunningham requests compensatory, incidental, punitive damages, and any other relief the Court deems just and proper.

## JURY DEMAND

44.    Ms. Cunningham demands a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Cunningham respectfully requests that this Court grant her the following relief against Defendants:

    a. Compensatory damages in an amount to be determined at trial pursuant to Plaintiff's claims against Defendants;

    b. Punitive damages;

c.  Reasonable Attorneys' fees, pursuant to 42 U.S.C § 1988(b); and

d.  Any other relief the Court deems proper.

Dated: September 12, 2024

SAMANTHA CUNNINGHAM
By Counsel

Respectfully submitted,

/s/     Benjamin North
Benjamin F. North (VSB No. 97439)
Lindsay R. McKasson (VSB No. 96074)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
ben@binnall.com
lindsay@binnall.com

Counsel for Plaintiff Samantha Cunningham